## Haslett *versus* Foster *et al.*

| 46 | 471 |
| 24 SC | ʰ351 |

*Act of* 1851, *relative to non-resident defendants in ejectment, construed.—How affected by Act of April* 13*th* 1858, *relative to ejectment for unseated land.*

1. The Act of 14th April 1851, providing that in any action brought by a vendor to enforce specific performance of a contract for sale of unoccupied land, where the vendees cannot be found in the county, judgment for default may be entered after sixty days' publication of a rule to appear and plead, must be construed in connection with Act 13th April 1858, declaring that the Act of 1851 shall extend to all cases where claimants or mortgagees desire to bring ejectment for unseated or unoccupied land and the adverse party does not reside in the county ; and with the proviso thereto that before trial or judgment shall be had in any such suit, it shall be made to appear to the satisfaction of the court that the defendant had notice in fact of the suit, in time to appear and defend it : and the proviso extends to the case of an ejectment by a vendor against a vendee for specific performance.

2. Therefore, in an ejectment by a vendor against a vendee, the advertisement of notice for sixty days, as required by the Act of 14th April 1851, is not sufficient to authorize the entry of judgment for default ; and it is error to permit the judgment to be taken without proof of notice in fact to the vendee as required by the proviso.

ERROR to the Common Pleas of *Clearfield county.*

This was an action of ejectment by Henrietta Foster, Charles R. Foster (the husband of Henrietta), and John D. McGirk, against R. F. Haslett, for a tract of land in Decatur township, containing three hundred and ninety-seven acres and allowance.

The material facts were these :—On the 28th April 1857, Henrietta Foster, the wife of Charles R. Foster, and John D. McGirk, of Philipburg, Centre county, Pennsylvania, by articles of agreement, sold to R. F. Haslett, of Spruce creek, Huntingdon county, Pennsylvania, executor of the estate of John B. Haslett, a tract of timber land in Clearfield county, surveyed in the name of Thomas Billington, containing three hundred and ninety-seven acres and allowance, for $6500, payable in three annual instalments of $2166.33 each. The first payment was made by a draft given and receipted on the article, April 28th 1857.

On the 13th of September 1859, this action was brought against Haslett, in the Common Pleas of Clearfield county, of No. 95, September Term 1859, for this land, describing it as the same premises contracted for between the parties to this suit on 28th April 1857. The suit was brought to enforce specific performance of the contract. The sheriff made return that the defendant, R. F. Haslett, was not found in his bailiwick. Upon this return, on motion of the attorney for plaintiffs, a rule was granted on Haslett, the defendant below, to appear and plead by the second Monday of January, A. D. 1860 (January 9th 1860), said rule to be published in the " Clearfield Republican," according to the Act of Assembly.

[Haslett *v.* Foster *et al.*]

January 12th 1860, the plaintiffs' attorney presented the affidavit of the editor of the " Clearfield Republican," made the 11th day of January, A. D. 1860, setting forth that the notice thereto annexed, with rule to plead, had been published in said newspaper during sixty days last past, and had been inserted therein at least three times.

Upon the proof thus presented, the court rendered judgment by default in favour of plaintiffs.

January 24th 1860, the plaintiffs below issued a writ of *habere facias possessionem*, under which possession of the premises was delivered to the plaintiffs below, January 27th 1860. Of these proceedings no personal or actual notice was given to Haslett. On the 17th of January, A. D. 1861, he presented a petition, setting forth, among other things, the facts in regard to the payments, and that he had no notice or knowledge of the legal proceedings till November, A. D. 1860, and asking the court to open the judgment and permit him to enter his appearance. Thereupon the court granted a rule on plaintiffs to show cause why judgment should not be opened, returnable to March Term 1861.

On the return of the rule the court made the following order :
" March 19th 1861, it is ordered by the court that the rule granted in this case be made absolute, provided the defendant shall, within thirty days, tender to the plaintiffs the balance of the purchase-money and interest due to them for the premises, and the plaintiffs shall refuse to accept such tender, and deliver to the defendant a deed according to the contract, the defendant to plead and put the same at issue, so that the same may be put upon the trial list for June Term."

The balance of the purchase-money was not tendered, and the judgment therefore remained.

The errors assigned by the defendant were these :—

1. The court erred in entering judgment by default in favour of the plaintiffs on the 12th January, A. D. 1860.

2. In not absolutely opening said judgment or striking it off, and in not allowing the plaintiff in error to enter an appearance when he made application to that effect.

3. In attaching to the order of March 19th 1861, in regard to opening the judgment, the conditions above mentioned.

*J. B. McEnally,* for plaintiff in error.—The court and counsel for defendant in error rest on the Act of April 14th 1851, § 11, which authorizes judgment by default to be entered after sixty days' publication. Another Act of Assembly, passed April 13th 1858, § 1, seems to have been entirely overlooked. This last act extends the provisions of the former act, and provides that before any trial or judgment, it shall be made to appear to the satisfaction of the court, that defendant has had notice in fact of the suit, in time to appear and defend it.

[Haslett v. Foster et al.]

By examining those two Acts of Assembly, it will be seen that to entitle plaintiffs to a judgment by default at the time the court granted it, they were bound to show—

1. That the rule to appear, &c., was published sixty days before the 9th of January 1860, the return day of the rule.

2. That the defendant, Haslett, had notice in fact of the suit, in time to appear and defend it.

3. The plaintiffs should also have filed with their declaration a copy or statement of the contract referred to, that the court might be informed from the record whether it was such contract as authorized the court to act, and also that the record might show, with reasonable certainty, what contract it was that was rescinded, or otherwise affected by the suit.

It is very evident from the record that in all these points the plaintiffs failed. It will be alleged that the court did open the judgment on the application of Haslett, on condition that he would pay the balance of the purchase-money in thirty days; and that by Haslett failing he loses his equity by his own neglect. Our reply is, that the court had no power to fix the time within which Haslett should pay or lose his rights or equities in the land. The court had no legal power to direct such a judgment to be entered in the case against him, either before or after thirty days, or with conditions or without them. The equities of a vendee are not to be destroyed but by strictly pursuing the course laid down by law: Ferguson & Betts v. Staver, 4 Wright 213. See also Fox v. Lyon, 3 Casey 9; 3 Binn. 356; 4 S. & R. 166. Even if the court had the power, the conditions imposed operated most unjustly and inequitably towards the plaintiff in error. He had paid $2166.33, or one-third of the purchase-money, and the court in effect gave plaintiffs below the land, unless Haslett would pay them the balance of the purchase-money in thirty days. But this same court had, about fifteen months before, delivered to the plaintiffs below the land which Haslett has thus purchased. And yet, without regard to the possession of the land by the plaintiffs below during that time, and without their accounting for the profits derived by them from land, amounting, as plaintiff in error alleges, to many thousand dollars, and perhaps more than the balance of the purchase-money, Haslett was required by the court to pay them, in addition to said profits, the whole balance of the purchase-money in thirty days, or lose the land.

*William A. Wallace*, for defendants in error.—To the second and third errors assigned, it is unnecessary to reply, further than to say, that the subject embraced is one that is essentially discretionary, and the action of the court below thereon is not assignable for error.

To the first error assigned, viz., "that the court erred in en-

[Haslett *v.* Foster *et al.*]

tering judgment," we reply, that the Act of 14th April 1851, § 11, authorized the proceeding, and that the judgment of the court is conclusive that its steps were followed. It is argued that the proviso to the Act of 1852 requires notice in fact, and that no such notice appears. The terms of the proviso itself have express reference to the suits named in the Act of 1858, and no others. The Act of 1851 embraces but a single class of cases, viz., ejectments brought to enforce specific performance of contracts. These are proceedings *in rem*. They are based upon the legal ownership of the land, and usually upon the legal title ; from their nature they presuppose the defendant in default, and in them the law requires the vendee to be active, prompt, and eager. The Act of 1858 extends the provisions of the Act of 1851, relative to the service of writs, to all cases where "claimants bring ejectments" "whenever the adverse claimant" resides out of the county, &c. Vendor and vendee are the terms used in the Act of 1851—claimants and adverse claimants are the words used in the Act of 1858. These terms are essentially different in their legal signification. When we say vendor and vendee, we understand that one claims title under and through the other. When we use the terms claimant and adverse claimant, we understand that one claims against, and not through or under the other. In the class of cases covered by the Act of 1858, the ownership of the legal title may be the very point in controversy ; in them the question of right is to be tried, and the adverse claimant is given his day in court, whilst in the proceedings for specific performance, the course is analogous to the return of two *nihils* upon a *sci. fa. sur mortgage*. The one under the Act of 1851 is essentially a proceeding *in rem ;* the other, under the Act of 1858, affects the title and the person.

The proviso to the Act of 1858 says, "before any trial or judgment shall be had" "in such suits," &c. The obvious meaning of these words, "such suits," is the suits referred to in the Act of 1858, viz., "claimants and adverse claimants;" whilst the construction given to these words by the plaintiff in error would embrace all cases, and in effect repeal the Act of 1851.

The Act of 1851 is copied from and follows the terms of the Act of 29th March 1824, giving this remedy in cases of sales of land for taxes. This, too, was a proceeding *in rem*, and was given to enable the owner or owners to bring their actions, and save them from the limitation of five years, provided by the Act of 1804.

The Act of 1858 follows, and its proviso is copied from the Act of 18th April 1853 ; that act used the words "for lands claimed adversely." This act, however, only gave the right of service on the agent, and in order to extend it to cases in which there was no agent or person in possession, the Act of 1858 was

[Haslett *v.* Foster *et al.*]

passed. If this be the true construction of these Acts of Assembly, the next question is, does the record show a compliance with the Act of 1851 ?

The decree of the court is follows :—

"January 12th 1860. On motion of William A. Wallace, Esq., attorney for. plaintiff, judgment by default in favour of plaintiff, it appearing that notice has been published according to the requirements of the Act of Assembly. By the Court."

The record was fully made up, and shows a perfect compliance with the Act of Assembly. If the court had jurisdiction, and the record shows a compliance with the Act of Assembly, this court will not look beyond it : Hall *et al. v.* Law, 2 W. & S. 235; Shafer *v.* Brobst, 9 S. & R. 85; 1 Smith's Lead. Ca. 816, 820.

The jurisdiction of the court having attached, the maxim *omnia rite acta* applies in its full force, and even if it did not, there is no error. The notice is dated 2d November 1859, and was published until January 11th—more than is necessary. The proof shows a publication three times, and during more than sixty days. The equities of Haslett in this case have been lost by his own neglect. He is not in a position to claim equity; he has never offered to do equity. He had notice of this proceeding prior to January Term 1861; he appeared in court at that time. Why not tender his money then? At March Term 1861, the plaintiffs offered to give him his deed—to yield him the possession—if he would pay the purchase-money. The order of 19th March 1861 was made, and even then no money was tendered. The 19th April 1861, was fixed by the order of court for confirmation of the contract. Time was made of the essence of the contract, and upon his failure to comply with the terms of that arrangement, all his rights were absolutely gone : Patchin *v.* Lamborn, 7 Casey 314; Seton *v.* Slade, 3 Lead. Ca. in Eq.

The plaintiff in error having awaited the change of circumstances, now believes it to be his interest to get the land. In our view of the case he has no standing, either in equity or at law, to reverse the judgment of the court below. Suppose he was in court seeking to enforce specific performance of his contract, without tender of purchase-money, and against a *feme covert* owner of a moiety, how would it be possible for him to obtain a decree ?

The opinion of the court was delivered, February 15th 1864, by

AGNEW, J.—There is but one question in this case, the construction of the Act 13th April 1858, § 1, Purdon of 1861, p. 365.

The Act of 14th April 1851, § 11, Purdon of 1861, p. 365, provided for the notice of writs of ejectment, brought by vendors against vendees to enforce specific performance where the

[Haslett *v.* Foster *et al.*]

lands are not occupied, and the vendees are out of the county, by publication of a rule to appear and plead, for sixty days. The Act of 13th April 1858, § 1, declares that the Act of 14th April 1851 shall extend to all cases where claimants or mortgagees desire to bring ejectment for unseated or unoccupied lands, and the adverse party does not reside in the county. But the proviso to the Act of 1858 requires that before trial or judgment shall be had in any such suit, it shall be made to appear, to the satisfaction of the court, that the defendant had notice in fact of the suit in time to appear and defend it.

The question is, whether this proviso extends to the case of an ejectment brought by a vendor against a vendee for specific performance. We think it does, not so much from the letter of the act (for this might be doubted, if we had to rely on the letter alone), as from the fact that it must be construed *in pari materia* with the former Act of 1851, and others passed in the interval, and in the same year.

The Act of 18th April 1853, § 1, Purdon 1861, p. 365, enacts that any person wishing to bring ejectment for land claimed adversely to him by any person or corporation, not resident or being within the county where such lands lie, may bring his action and serve the writ on any person within the county having charge or superintendence of the land in behalf of or as agent of such party claiming adversely: provided, that before any trial or judgment shall be had in such suit, it shall be made to appear, to the satisfaction of the court, that the defendant had notice in fact of the suit in time to appear and defend it. It will be noticed that the proviso of the Act of 1858 is an exact transcript of the Act of 1853, while the latter extends to all actions of ejectment against non-resident owners. It may be well supposed the penman of the Act of 1858, in copying from the Act of 1853, intended the Act of 1858 to be coextensive with that of 1853.

Then comes the Act of 21st April 1858, § 1, Purdon, 1861, p. 31, which provides for the service of a summons, or mesne process upon non-residents of the Commonwealth doing business here, upon the agent or clerk, and provides also that before final judgment is entered in any case under this act, actual notice in writing shall be given to the party defendant of such action, and the nature thereof.

Reading all these acts together, they seem to leave no doubt of the intention of the legislature to require actual notice in all ejectments for unseated or unimproved land. When we consider also the inconvenience of a rule for each class, where one rule for both would serve so much better, by preventing confusion, and consequent error, it seems to us the proper construction of the Act of 1858 is to require notice to the defendants to

[Haslett *v.* Foster *et al.*]

the satisfaction of the court, whether the plaintiffs be vendees or other claimants, or mortgagees.

This notice was not given as required by the court below, and therefore the judgment must be reversed, the publication alone for sixty days of the rule to appear and plead being insufficient.

Judgment reversed, and the record ordered to be remitted for further proceedings in the court below.

WOODWARD, C. J., was absent at Nisi Prius.